# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CATHRYN R. WALLACE,      )
        )
      Plaintiff,    )
v.      )
        )
GOLDEN RULE INSURANCE    )    Case No. CIV-22-00878-PRW
COMPANY; UNITEDHEALTH CARE,  )
INC., UNITED HEALTHCARE LIFE  )
INSURANCE CO.; and UNITED    )
HEALTH GROUP, INC.,    )
        )
      Defendants.   )

## ORDER

Before the Court is Defendants UnitedHealthcare, Inc., United Healthcare Life Insurance Company, and UnitedHealth Group, Inc.'s (collectively the "United Defendants") Motion to Dismiss (Dkt. 9). This matter is fully briefed, and for the reasons given below, the motion is **GRANTED** in part and **DENIED** in part.

### *Background*[1]

In 2017, Plaintiff Cathryn R. Wallace was injured in a car accident. She sought medical treatment for her injuries, and in January 2018, she visited a doctor for increased pain in her back and left leg. Ms. Wallace's doctor recommended continuing conservative

---

[1] At this stage in the proceedings, the Court accepts the plaintiff's well-pleaded allegations as true. So, this factual background reflects the plaintiff's account.

care with a chiropractor. But due to increased pain in her neck and back, Ms. Wallace later underwent an MRI; the MRI scans revealed "problems with her spine."[2]

Her doctor again recommended conservative care, this time including a cervical epidural steroid injection. After several months of conservative treatment, however, Ms. Wallace continued to have lumbar radicular symptoms, cervical occipital neuralgia, cervical radicular symptoms, and occipital neuralgia-type headaches. In sum, Ms. Wallace failed to respond to conservative, non-operative care. So, after enduring over a year of pain stemming from her 2017 car accident, Ms. Wallace underwent a one-level anterior cervical discectomy and fusion on September 16, 2019. A few months later, she underwent a three-level fusion.

At the time of her procedures, Ms. Wallace was insured by Defendant Golden Rule Insurance Company ("Golden Rule"), a subsidiary of Defendant UnitedHealth Group, Inc. ("UHG"). Golden Rule ultimately denied Ms. Wallace's claim. In March 2021, Defendant United Healthcare Life Insurance Company ("UHLIC") conducted a utilization review of her claim to determine whether coverage existed. Defendant UHLIC informed Ms. Wallace by letter that her claim was denied because her procedures were not "medically necessary."[3]

Ms. Wallace sued Golden Rule and the United Defendants in the District Court for Oklahoma County, asserting claims for breach of contract, breach of the implied covenant

---

[2] Pl.'s Am. Compl. (Dkt. 35), ¶ 10.

[3] Pl.'s Resp. (Dkt. 10), at 9.

of good faith and fair dealing, and intentional infliction of emotional distress. She also seeks punitive damages for the Defendants' alleged wrongful acts. After the case was removed to this Court, the United Defendants moved to dismiss Ms. Wallace's breach-of-contract and bad-faith tort claims for lack of personal jurisdiction and for failure to state a claim.

### *Legal Standards*

I.    *Rule 12(b)(2).*

The plaintiff has the burden of establishing that personal jurisdiction exists.[4] When addressing a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction.[5] "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[6] To defeat a plaintiff's prima facie showing, a defendant must show "that the presence of some other considerations would render jurisdiction unreasonable."[7] The Court resolves all factual disputes in favor of the plaintiff.[8]

II.    *Rule 12(b)(6).*

In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll well-pleaded facts, as

---

[4] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[5] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

[6] *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[7] *Id.*

[8] *Old Republic*, 877 F.3d at 903.

distinguished from conclusory allegations,"[9] must be accepted as true and viewed "in the light most favorable to the plaintiff."[10] Parties bear the "obligation to provide the grounds of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[11] The pleaded facts must be sufficient to establish that the claim is plausible.[12] In considering whether a claim is plausible, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving party."[13] Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it "state[s] a claim to relief that is plausible on its face," meaning that it pleads sufficient facts to support a "reasonable inference that the defendant is liable for the misconduct alleged."[14]

## Discussion

### I.   *Personal Jurisdiction.*

"A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant

---

[9] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

[10] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[11] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[12] *See id.*

[13] *Brokers' Choice of Am., Inc.*, 861 F.3d at 1105.

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

and (2) the exercise of statutory jurisdiction comports with constitutional due process."[15] Because Oklahoma law permits courts to "exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States,"[16] "the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry."[17]

Exercising jurisdiction over a nonresident defendant "comports with constitutional due process" if there are "sufficient 'minimum contacts between the defendant and the forum state,'"[18] such that "having to defend the lawsuit there would not offend traditional notions of fair play and substantial justice."[19] Those minimum contacts may support general or specific jurisdiction.[20]

### A. *General Jurisdiction.*

General jurisdiction exists over foreign corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[21] "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business."[22] And

---

[15] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020).

[16] Okla. Stat. tit. 12, § 2004(F).

[17] *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012)

[18] *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[19] *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022).

[20] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020).

[21] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945)).

[22] *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).

because general jurisdiction isn't related to "events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts."[23]

The United Defendants are not incorporated in Oklahoma, nor do they maintain their principal places of business in Oklahoma. But general jurisdiction isn't limited to a corporation's place of incorporation and its principal place of business: "[I]n an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State."[24] This, however, is not an exceptional case. The only allegations that the United Defendants are "essentially at home" in Oklahoma are that they are "licensed to provide insurance in Oklahoma, provide insurance in Oklahoma, and are licensed to, and do, conduct business in Oklahoma."[25] But even if true, these threadbare allegations are insufficient to support a finding that the United Defendants' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[26] The Court thus concludes that general jurisdiction does not exist.

---

[23] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

[24] *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).

[25] Pl.'s Resp. (Dkt. 10), at 3.

[26] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945)).

B. *Specific Jurisdiction.*

In contrast to general jurisdiction, specific jurisdiction "allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State."[27] Specific jurisdiction requires the plaintiff to show that the defendant has "minimum contacts" with that State.[28] If the plaintiff makes this showing, the court then determines whether exercising personal jurisdiction would "offend traditional notions of fair play and substantial justice."[29]

1. *Minimum Contacts*

To meet the minimum-contacts requirement, a plaintiff must show that "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'"[30]

a. *"Purposeful Direction"*

The purposeful-direction inquiry considers "both the quantity and quality of a defendant's contacts with the forum."[31] This inquiry "ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated

---

[27] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020).

[28] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

[29] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 908–09 (10th Cir. 2017).

[30] *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

[31] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020).

contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction."[32]

The Tenth Circuit has identified several frameworks "to help determine whether purposeful direction has been established."[33] Ms. Wallace argues that she has established purposeful direction under one of those frameworks: harmful effects in the forum state (the harmful-effects framework). Under the harmful-effects framework, "[p]urposeful direction may . . . be established . . . when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state."[34] This requires Ms. Wallace to show "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state."[35]

Ms. Wallace asserts that the Court has personal jurisdiction over UHG, the parent company of the other United defendants, through an alter-ego theory of personal jurisdiction. "In order to establish jurisdiction under the alter-ego theory, there must be proof of pervasive control by the parent over the subsidiary more than what is ordinarily exercised by a parent corporation."[36] Courts consider a list of factors to determine whether the parent corporation exercised such control over its subsidiaries.[37] The United

---

[32] *Id.* at 840–41 (internal quotations and citations omitted).

[33] *Id.* at 841.

[34] *Id.*

[35] *See id.*

[36] *Gilbert v. Security Finance Corp. of Oklahoma, Inc.*, 152 P.3d 165, 174 (Okla. 2006) (citing *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003)).

[37] These factors include: "(1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations

Defendants argue that Ms. Wallace's Complaint merely lists the elements of an alter-ego claim without presenting any supporting factual allegations. The Court agrees that Ms. Wallace's boilerplate, conclusory allegations fail to establish an alter-ego theory of personal jurisdiction with respect to UHG, the parent company of the other United Defendants.

Other than the activities of its subsidiaries, Ms. Wallace alleges no facts suggesting that UHG ever purposefully directed any activities to Ms. Wallace or within the State of Oklahoma. She also fails to allege facts suggesting that Defendant UnitedHealthcare, Inc. ("UHC") purposefully directed any activities to Ms. Wallace or within the State of Oklahoma. She has thus failed to establish that UHG or UHC have the minimum contacts required for this Court to exercise personal jurisdiction. The Court thus **GRANTS** the defendants' motion as to UHG and UHC.

Ms. Wallace responds, however, that UHLIC purposefully directed its activities within the State of Oklahoma. According to the allegations in her complaint, UHLIC conducted a utilization review of Ms. Wallace's claim on behalf of Golden Rule to

---

have common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate." *Id.* at 175.

determine whether coverage existed.[38] Following this review, UHLIC mailed a letter to Ms. Wallace's Oklahoma address, informing her that her claim was denied.[39] These were intentional actions aimed at an Oklahoma resident, and UHLIC knew the brunt of the denial of Ms. Wallace's claim would be felt in Oklahoma. These actions are sufficient to show that UHLIC purposefully directed its activities within Oklahoma.

      *b.  "Arising out of."*

The second step of the minimum-contacts test requires that "the plaintiff's injuries 'arise out of' the defendant's forum-related activities."[40] This means that "there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State."[41] The arising-out-of requirement "ensure[s] that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum."[42]

Ms. Wallace alleges that the injuries underlying her bad faith and breach of contract claims arose out of UHLIC's utilization review. While the utilization review was conducted outside of Oklahoma, the subject of the review, Ms. Wallace, was an Oklahoma resident. Furthermore, Ms. Wallace alleges that Golden Rule denied her claim based on UHLIC's

---

[38] Pl.'s Am. Compl. (Dkt. 35), ¶ 31.

[39] *Id.*

[40] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 908 (10th Cir. 2017).

[41] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 908 (10th Cir. 2017) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017)).

[42] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020).

utilization review, and this denial is the source of Ms. Wallace's injuries in her bad faith and breach of contract claims. So, Ms. Wallace's injuries arose out of UHLIC's utilization review.

For the reasons given above, Ms. Wallace has established that Defendant UHLIC has minimum contacts with the State of Oklahoma.

### 2.  Fair Play and Substantial Justice

Even if the plaintiff satisfies the minimum-contacts requirement, the Court "must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice."[43] And in making this determination, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[44] The Court assesses unreasonableness by considering "(1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies."[45]

Exercising personal jurisdiction over UHLIC does not offend traditional notions of fair play and substantial justice. First, UHLIC doesn't present *any* reasons that exercising jurisdiction would be unreasonable, let alone a "compelling case." And second, considering

---

[43] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 908 (10th Cir. 2017).

[44] *Id.* at 909.

[45] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020).

the relevant factors listed above, the Court finds that exercising personal jurisdiction over UHLIC "is 'reasonable' in light of the circumstances surrounding the case."[46] Regarding the first factor, while UHLIC's representatives will have to travel to Oklahoma to appear before the Court, it can do the majority of the work in pursuing this litigation in its home state. Second, Oklahoma has a manifest interest in providing a forum in which its residents can seek redress for disputes with their insurer's third-party administrators. Third, exercising personal jurisdiction would not harm Ms. Wallace's interest in receiving convenient and effective relief. The fourth factor does not appear to weigh in favor of either party since the parties are split evenly between different states, and neither party argues that more witnesses are located in either state. Finally, there is no reason why Oklahoma exercising jurisdiction in this case would impact social policy issues of other states.

Accordingly, the Court has personal jurisdiction over Defendant UHLIC.

## II.   *Merits.*

Defendant UHLIC, the sole United entity over which the Court has personal jurisdiction, moves to dismiss Ms. Wallace's breach-of-contract and bad-faith tort claims pursuant to Rule 12(b)(6) for failure to state a claim.

### A.   *Breach of Contract.*

UHLIC argues that Ms. Wallace's breach of contract claim should be dismissed because there is no contractual relationship between Ms. Wallace and UHLIC. Ms. Wallace responds that she is a third-party beneficiary of the contract between Golden Rule and

---

[46] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

UHLIC for utilization review, and that her status as such allows her to enforce the contract.[47]

Assuming without deciding that Ms. Wallace is a third-party beneficiary of this contract, that status allows her only to step into the shoes of Golden Rule to enforce its contractual rights against UHLIC.[48] This contract obligates UHLIC to provide utilization reviews to Golden Rule. But the relief Ms. Wallace seeks is payment of health insurance benefits, not utilization review services. The contract does not create an obligation for UHLIC to pay Ms. Wallace's health insurance benefits. So, even if Ms. Wallace were a third-party beneficiary of this contract, she could not maintain a breach of contract claim against UHLIC for failure to pay her claim.

### B.  Bad Faith.

UHLIC applies the same argument for dismissing Ms. Wallace's breach of contract claim to her bad faith claim. In other words, it cannot be liable for bad faith because there is no contractual relationship between Ms. Wallace and UHLIC. The Oklahoma Supreme Court, however, has recognized that if "a non-party to the insurance contract . . .  engages in activities or conduct such that it may be found to be acting sufficiently like an insurer so that a special relationship can be said to exist between the entity and the insured,"[49] then

---

[47] Ms. Wallace is correct that a third-party beneficiary of a contract may enforce the contract. *Wathor v. Mut. Assur. Adm'rs, Inc.*, 87 P.3d 559, 563 (Okla. 2004); 15 Okla. Stat. 2001 § 29 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.").

[48] *Wathor*, 87 P.3d, at 563.

[49] *Badillo v. Mid Century Insurance Co.*, 121 P.3d 1080, 1101 (Okla. 2005).

"the same duty of good faith and fair dealing as that imposed on the actual insurer issuing the insurance policy"[50] is imposed on that non-party. The issue, then, is not whether Ms. Wallace has a contractual relationship with UHLIC, but whether she has a special relationship with UHLIC that would subject it to the duty of good faith and fair dealing.

In determining whether this special relationship exists, courts consider whether the insurer and the non-party are affiliated, whether they "acted as one entity in regard to [the] insured's policy . . . [and] claim,"[51] and whether the non-party "performs many of the [insurer's] tasks, has a compensation package that is contingent on the approval or denial of claims, and bears some of the financial risk of loss for the claims[.]"[52]

Ms. Wallace has alleged facts sufficient to show that a special relationship exists between herself and UHLIC. Her allegations show that UHLIC was involved in Ms. Wallace's benefit determination through its utilization review, that UHLIC and Golden Rule are affiliated companies, and that UHLIC bears some of the financial risk of loss for the claim given its corporate relationship with Golden Rule. UHLIC counters that there are no allegations regarding UHLIC's compensation package for performing utilization reviews. While compensation is a relevant factor, a lack of allegations on this factor is not dispositive.[53] Ms. Wallace's other allegations adequately show that UHLIC was

---

[50] *Id.* (citation omitted).

[51] *Id.*

[52] *Wathor*, 87 P.3d, at 563.

[53] *See Wright v. Liberty Mut. Ins. Co.*, No. CIV-17-73-W, 2017 WL 11139927, at *11 (W.D. Okla. Apr. 17, 2017).

sufficiently entangled with Ms. Wallace to create a special relationship with her, subjecting UHLIC to the duty of good faith and fair dealing.

*Conclusion*[54]

For the reasons given above, the United Defendants' motion to dismiss (Dkt. 9) is **GRANTED** in part and **DENIED** in part. Ms. Wallace's claims against Defendant United Health Group, Inc. and UnitedHealthcare, Inc. are **DISMISSED** for lack of personal jurisdiction, and her breach-of-contract claim against Defendant United Healthcare Life Insurance Co. is **DISMISSED** for failure to state a claim.

　　**IT IS SO ORDERED** this 29th day of September 2023.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[54] The United Defendants did not move to dismiss Ms. Wallace's claim for intentional infliction of emotional distress or her request for punitive damages. This Order does not affect those claims as to UHLIC, the sole remaining United Defendant.